UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

CHEM RX PHARMACY SERVICES, LLC,

                    Plaintiff,

v.                                      1:19-CV-1312
                                              (GTS/CFH)

SARATOGA CARE AND REHABILITATION LLC;
and SARATOGA CENTER FOR CARE, LLC d/b/a
Saratoga Center for Rehab and Skilled Nursing Care,

                    Defendants.
_____

APPEARANCES:                                             OF COUNSEL:

FULTZ MADDOX DICKENS PLC            MATTHEW C. WILLIAMS, ESQ.
  Counsel for Plaintiff
101 S. Fifth Street, 27th Floor
Louisville, KY 40202

GLENN T. SUDDABY, Chief United States District Judge

## DECISION and ORDER

Currently before the Court, in this breach of contract action filed by Chem Rx Pharmacy Services, LLC ("Plaintiff") against Saratoga Care and Rehabilitation Center, LLC, and Saratoga Center for Care, LLC ("Defendants"), is Plaintiff's motion for default judgment pursuant to Fed. R. Civ. P. 55(b)(2). (Dkt. No. 11.) For the reasons stated below, Plaintiff's motion is granted.

**I.     RELEVANT BACKGROUND**

     **A.**     **Plaintiff's Complaint**

Generally, in its Complaint, Plaintiff alleges that Defendants engaged in breach of contract by failing to comply with the Settlement Agreement between the parties. (Dkt. No. 1 [Pl.'s Compl.].) More specifically, Plaintiff alleges that Defendants failed to pay the second

monthly payment required under the Settlement Agreement despite the fact that Plaintiff provided them notice of their default. (*Id.*)  Plaintiff alleges that Defendants made only a single payment under the Settlement Agreement, leaving the uncured default amount of $282,231.33 plus 12% interest from March 6, 2018, less the $12,915.00 that Defendants paid (which is to be applied first to interest and then to principle). (*Id.*)  Plaintiff also asserts that it is entitled to recovery of its attorneys' fees and costs related to its collection efforts. (*Id.*)

### B. Relevant Procedural History

On October 24, 2019, Plaintiff filed the Complaint against Defendants. (Dkt. No. 1.)  On January 3, 2020, Plaintiff filed proof of service as to both Defendants that indicated the Summons and Complaint had been sent to them by certified mail on December 16, 2019. (Dkt. Nos. 5, 6.)  On January 7, 2020, Plaintiff requested that the Clerk enter Defendants' default pursuant to Fed. R. Civ. P. 55(a) and Local Rule 55.1 of the District's Local Rules of Practice, which the Clerk did on the same date. (Dkt. Nos. 7, 8.)

### C. Plaintiff's Motion for Default Judgment and Defendants' Non-Response

On February 10, 2020, Plaintiff filed its current motion for default judgment against Defendants. (Dkt. No. 11.)  As of the date of this Decision and Order, Defendants have not filed a response to either the Complaint or Plaintiff's motion. (*See generally* Docket Sheet.)

## II. RELEVANT LEGAL STANDARD

"Federal Rule of Civil Procedure 55 provides a two-step process that the Court must follow before it may enter a default judgment against a defendant." *Robertson v. Doe*, 05-CV-7046, 2008 WL 2519894, at *3 (S.D.N.Y. June 19, 2008).  "First, under Rule 55(a), when a party fails to 'plead or otherwise defend . . . the clerk must enter the party's default.'" *Robertson*, 2008

WL 2519894, at *3 (quoting Fed. R. Civ. P. 55[a]). "Second, pursuant to Rule 55(b)(2), the party seeking default judgment is required to present its application for entry of judgment to the court." *Id*. "Notice of the application must be sent to the defaulting party so that it has an opportunity to show cause why the court should not enter a default judgment." *Id*. (citing Fed. R. Civ. P. 55[b][2]). "When an action presents more than one claim for relief . . . , the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties . . . if the court expressly determines that there is no just reason for delay." Fed. R. Civ. P. 54(b).

Pursuant to Second Circuit law, when determining whether to grant a default judgment, the Court must consider three factors: (1) whether the defendant's default was willful; (2) whether the defendant has a meritorious defense to the Government's claims; and (3) the level of prejudice the non-defaulting party would suffer as a result of the denial of the motion for default judgment. *Pecarksy v. Galaxiworld.com, Ltd.*, 249 F.3d 167, 170-71 (2d Cir. 2001); *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 96 (2d Cir. 1993). "An unexcused or unexplained failure to provide an answer to the Complaint will itself demonstrate willfulness," as does failing to respond to both a complaint and a subsequent motion for default judgment. *United States v. Silverman*, 15-CV-0022, 2017 WL 745732, at *3 (E.D.N.Y. Feb. 3, 2017) (citing *S.E.C. v. McNulty*, 137 F.3d 732, 738-39 [2d Cir. 1998]; *Indymac Bank v. Nat'l Settlement Agency, Inc.*, 07-CV-6865, 2007 WL 4468652, at *1 [S.D.N.Y. Dec. 20, 2007]).

When a court considers a motion for the entry of a default judgment, it must "accept[ ] as true all of the factual allegations of the complaint . . . ." *Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61, 65 (2d Cir. 1981) (citations omitted). "However, the court cannot construe the damages alleged in the complaint as true." *Eng'rs Joint Welfare, Pension, Supplemental Unemployment*

*Benefit and Training Funds v. Catone Constr. Co., Inc.*, 08-CV-1048, 2009 WL 4730700, at *2 (N.D.N.Y. Dec. 4, 2009) (Scullin, J.) (citing *Credit Lyonnais Sec. (USA), Inc. v. Alcantara*, 183 F.3d 151, 155 [2d Cir. 1999] [citations omitted]).  "Rather, the court must 'conduct an inquiry in order to ascertain the amount of damages with reasonable certainty.'" *Eng'rs Joint Welfare, Pension, Supplemental Unemployment Benefit and Training Funds*, 2009 WL 4730700, at *2 (quoting *Alcantara*, 183 F.3d at 155 [citation omitted]).  This inquiry "involves two tasks: [1] determining the proper rule for calculating damages on such a claim, and [2] assessing plaintiff's evidence supporting the damages to be determined under this rule." *Alcantara*, 183 F.3d at 155.  Finally, in calculating damages, the court "need not agree that the alleged facts constitute a valid cause of action . . . ." *Au Bon Pain*, 653 F.2d at 65 (citation omitted).

      Under N.D.N.Y. L.R. 55.2(a), when requesting an entry of default judgment from the Clerk of the Court, the moving party must submit (a) the Clerk's certificate of entry of default, (b) a statement showing the principal amount due (not to exceed the amount demanded in the Complaint and giving credit for any payments with the dates of payments), (c) a computation of the interest to the day of judgment, (d) a per diem rate of interest, (e) the costs and taxable disbursements claimed, and (f) an affidavit of the moving party or the party's attorney.  N.D.N.Y. L.R. 55.2(a).  The appended affidavit must show that (a) the party against whom judgment is sought is not an infant or incompetent person, (b) the party against whom judgment is sought is not in military service, (c) the party against whom judgment is sought has defaulted in appearance in the action, (d) service was properly effected under Fed. R. Civ. P. 4, (e) the amount shown in the statement is justly due and owing and no part has been paid except as set forth in the party's other statement, and (f) disbursements sought to be taxed have been made in the

4

action or will necessarily be made or incurred.  *Id.*

Under N.D.N.Y. L.R. 55.2(b), when moving for an entry of default judgment from the Court, the moving party must submit (a) the Clerk's certificate of entry of default, (b) a proposed form of default judgment, (c) a copy of the pleading to which no response has been made, and (d) an affidavit of the moving party or its attorney setting forth the facts required by N.D.N.Y. L.R. 55.2(a).  N.D.N.Y. L.R. 55.2(b).

## III.   ANALYSIS

After carefully considering whether Plaintiff is entitled to default judgment, the Court answers that question in the affirmative for the following reasons.

An entry of default "formalizes a judicial recognition that a defendant has, through its failure to defend the action, admitted liability to the plaintiff."  *City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 128 (2d Cir. 2011).  However, "[a] court's decision to enter a default against defendants does not by definition entitle plaintiffs to an entry of a default judgment.  Rather, the court may, on plaintiffs' motion, enter a default judgment if liability is established as a matter of law when the factual allegations of the complaint are taken as true."  *Bricklayers and Allied Craftworkers Local 2, Albany, N.Y. Pension Fund v. Moulton Masonry & Const., LLC*, 779 F.3d 182, 188 (2d Cir. 2015).

As an initial matter, the Court finds that Plaintiff's submissions meet the procedural requirements of Local Rule 55.2(b).  (Dkt. No. 34, Attach. 2, at 5-7, 9-10.)  The Court therefore must assess whether Plaintiff has sufficiently alleged all the substantive requirements related to its specific claim.

Relevant to the breach-of-contract claim, the Settlement Agreement contains a choice-of-

law clause that specifies that "[t]his Agreement will be governed by, and construed in all respects in accordance with, the laws of the Commonwealth of Kentucky, without regard to the conflicts of law rules of any state." (Dkt. No. 1, Attach. 1, at 9.) "A federal court sitting in diversity applies the choice-of-law rules of the forum state." *Innovative BioDefense, Inc. v. VSP Technologies, Inc.*, 12-CV-3710, 2013 WL 3389008, at *3 (S.D.N.Y. July 3, 2013); *Chiste v. Hotels.com L.P.*, 756 F. Supp. 2d 382, 408 (S.D.N.Y. 2010) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 [1941]). "Under traditional New York choice-of-law rules, absent fraud or a violation of public policy, courts will uphold a choice-of-law clause so long as the state selected has sufficient contacts with the transaction." *Innovative BioDefense*, 2013 WL 3389008, at *3 (citing *Int'l Minerals & Res., S.A. v. Pappas, et al.*, 96 F.3d 586, 592 [2d Cir. 1996]); *see Chiste*, 756 F. Supp. 2d at 408 ("New York courts typically enforce a choice-of-law clause in a contract when the chosen law has a 'reasonable relationship' to the contract and does not violate New York public policy.").

    However, the Court need not conclusively decide whether New York or Kentucky law applies to Plaintiff's breach-of-contract claim because the elements of such a claim are essentially the same under either state's law, and Plaintiff has alleged facts sufficient to meet either state's standard.  *See Harsco Corp. v. Segui*, 91 F.3d 337, 348 (2d Cir. 1996) (stating that, under New York law, the complaint must allege [1] the existence of an agreement, [2] adequate performance of the contract by the plaintiff, [3] a breach by the defendant, and [4] damages); *Metro Lousiville/Jefferson Cnty. Govm't v. Abma*, 326 S.W. 3d 1, 8 (Ky. Ct. App. 2009) ("To prove a breach of contract under Kentucky law , the complainant must establish three things: (1) existence of a contract; (2) breach of that contract; and (3) damages flowing from the breach of

6

contract."). Specifically, the Complaint provides factual allegations about (a) the parties' entrance into the Settlement Agreement (and a copy of that agreement is attached), (b) the circumstances of Defendants' default by their failure to make the required payment, and their failure to cure that default upon receiving notice from Plaintiff, and (c) the amount of unpaid principle and interest that remain due under the Settlement Agreement, as well as the additional damages Plaintiff is entitled to under the terms of the Settlement Agreement. (Dkt. No. 1.) Additionally, there is no indication that Defendants would have a meritorious defense related to this claim. The Court therefore finds that Plaintiff has adequately shown that they are entitled to a finding of liability on their breach-of-contract claim, regardless of which state's law is applied.

The Court also finds that Plaintiff has sufficiently established damages. As to the amount of the principle and interest, the submitted materials, including the Settlement Agreement itself, sufficiently establish the amount requested by Plaintiff. Specifically, the Settlement Agreement establishes that the debt owed was $282,231.33, plus interest at a rate of 12% per annum ($92.79 per diem) from March 6, 2018, until paid in full (which totaled $44,074.48 as of June 24, 2019). (Dkt. No. 1, Attach. 1, at 5.) Additional evidence establishes that Defendants made a payment of $12,915.00 on August 21, 2019, which was applied to the balance of his accrued interest at that time. (Dkt. No. 11, Attach. 6, at 1.) Given this information, the Court finds that Plaintiff has established entitlement to damages in the following amounts: $282,231.33 in principle; $52,594.74 in interest between March 6, 2018, and February 10, 2020 ($65,509.74, less the $12,915.00 payment that Defendants made); and interest at a rate of 12% per annum from February 10, 2020, through the date of this decision.

As to the amount of attorneys' fees and costs, the Settlement Agreement states that,

"upon an uncured Settlement Default, [Defendants] promise to pay to [Plaintiff] all reasonable costs and expenses of collection of the Previous Saratoga Settlement Amount and the amounts due hereunder, including, but not limited to, reasonable attorneys' fees and court costs," including "any costs and expenses in any action or proceeding, including but not limited to the Second Action and any action or proceeding that may be filed to enforce this Agreement." (Dkt. No. 1, Attach. 1, at 9.) Plaintiff argues that it is entitled to the following amounts for the period from March 25, 2018, through January 31, 2020: (a) $49,681.50 in attorneys' fees; and (b) $4,225.23 in costs. (Dkt. No. 11, Attach. 7, at ¶ 10, 25-29 [Williams Aff.].)

For attorneys' fees, Plaintiff has requested the following amounts: (1) 0.80 hours for Partner Benjamin C. Fultz (who has 25 years of litigation experience) at a rate between $370 and $390; (2) 44.50 hours for Partner Jennifer M. Stinnett (who has been an attorney since 2003, joined FMD in 2007, and became a partner in 2011) at a rate between $320 and $330; (3) 47.30 hours for Partner Matthew C. Williams (who has been an attorney since 2008, joined FMD in 2013, and became a partner in 2018) at a rate between $300 and $310; (4) 53.20 hours for Associate Ashley M. Eade (who has been an attorney since 2010 and joined FMD in 2015) at a rate of $250 per hour; (5) 8.30 hours for Junior Associate Evan E. Wright at a rate of $215; (5) 4.60 hours for Of Counsel William H. Mazur (who has nine years of litigation experience) at a rate of $285 per hour; and (6) 45.9 hours for paralegals at a rate of $90 per hour. (Dkt. No. 11, at ¶ 12; Dkt. No. 11, Attachs. 7, 8, 9.)

Based on a thorough review of the relevant case law and the circumstances of this case, the Court finds that Plaintiff is entitled to the following rates: (a) $325 for Attorney Fultz; (b) $300 for Attorney Stinnett; (c) $275 for Attorney Williams; (d) $200 for Attorneys Eade and

Wright; (e) $225 for Attorney Mazar; and (f) $90 for paralegals. *See Golub Corp. v. KLT Indus., Inc.*, 18-CV-1125, 2020 WL 3254133, at *4 (N.D.N.Y. June 16, 2020) (Kahn, J.) (finding that a rate of $350 was reasonable for a partner with approximately 20 years of experience); *Gould v. Marconi Devel. Gr., LLC*, 19-CV-1454, 2020 WL 2404760, at *2-3 (N.D.N.Y. May 12, 2020) (D'Agostino, J.) (finding rates of $325 and $300 to be reasonable); *Perez v. Cnty of Rensselaer, New York*, 19-CV-0950, 2020 WL 1975069, at *2-3 (N.D.N.Y. Apr. 24, 2020) (Hurd, J.) (finding that rates of $300 for senior attorney and $200 for an associate attorney were reasonable); *KeyBank Nat'l Assoc. v. Monolith Solar Associates,. LLC,* 19-CV-1562*,* 2020 WL 1157650, at *7 (N.D.N.Y. Mar. 10, 2020) (Hurd, J.) (finding that rates of $280 and $265 were reasonable for various partners and a rate of $200 was reasonable for an associate); *Premium Sports, Inc. v. Nichols*, 17-CV-0741, 2018 WL 3574870, at *9 (N.D.N.Y. July 25, 2018) (Suddaby, C.J.) (finding that $300 was reasonable for a partner with 20 years of experience and that $200 was reasonable for an associate attorney with five years of experience) (collecting cases). The Court also notes that it will apply only half of the normal rate for Attorney Stinnett to ten of her billed hours because it appears that she included the time spent traveling between Albany, New York, and Louisville, Kentucky in her billed hours on those occasions. (Dkt. No. 11, Attach. 9, at 14-15 [entries for Oct. 10, 2018, and Oct. 11, 2018].) *See Lee v. City of Syracuse*, 03-CV-1329, 06-CV-0949, 2012 WL 2873533, at *2 (N.D.N.Y. July 12, 2012) (Hurd, J.) (charging travel time at half of the attorney's hourly rate); *Lewis v. City of Albany Police Dept.*, 554 F. Supp. 2d 297, 299 (N.D.N.Y. 2008) (Hurd, J.) ("[I]t is customary in this district to allow only one-half the hourly rate for travel time."). Although Plaintiff does not specify the exact number of hours that were related to this travel (as opposed to attending the hearing and/or preparing for the hearing), the

9

Court has estimated based on the approximate time for a standard flight between these cities. Because these appear to be the only notable instances of problematic block billing in the submitted time records, the Court declines to apply a percentage reduction; however, Plaintiff's counsel is cautioned to avoid engaging in such practices in future applications for attorneys' fees before this Court. *See Murphy v. Lajunie*, 13-CV-6503, 2018 WL 7968908, at *12 (S.D.N.Y. Feb. 2, 2018) (noting that, "[w]hen plaintiffs submit block-billed time records, courts frequently apply an across-the-board percentage reduction as a 'practical means of trimming fat' from a fee application"), report-recommendation adopted by 2019 WL 642695 (S.D.N.Y. Feb. 15, 2019).

The cases cited by Plaintiff in which the Court granted much higher hourly rates are outliers and the Court sees no reason based on the evidence provided to depart from the more standard rates that have been found to be reasonable. Contrary to Plaintiff's assertions, nothing in the materials submitted indicate that counsel were required to use any specialized knowledge, or that the actions in this case have involved any overly complicated issues for which an upward departure from the standard rates would be warranted. (Dkt. No 11, Attach. 7, at ¶ 21 [Williams Aff.] [noting that the work involved primarily negotiating settlement agreements, handling matters related to default of those agreements, filing actions, serving papers, preparing a motion for judgment on the pleadings, and monitoring the status of the skilled nursing facility owned by Defendants].) As a result, the Court finds that Plaintiff is entitled to a total of $ 43,008.00 in attorneys' fees.

As to costs, Plaintiff seeks the following amounts: (1) $181.70 for photocopies; (2) $711.86 for computer research; (3) $1,117.87 for travel (comprised of $685.40 for airfare, $189.24 for lodging, $67.51 for transportation, $36.00 for parking, and $139.72 for meals); (4)

$92.25 for postage; (5) $176.70 for express or courier delivery service; (6) $1,020.00 in various filing fees; and (7) $924.85 in "miscellaneous" costs related to various service fees, obtaining certificates of good standing, transcript fees, and teleconference costs. (Dkt. No. 11, Attachs. 10 and 11.) Here, there is no doubt that Plaintiff is entitled by the terms of the contract to recover its costs related to this action, and this Court recognizes that costs such as court fees, postage and courier fees, transportation, photocopies, electronic research, document management fees, and messenger and process server fees are generally recoverable. *Hanifin v. Accurate Inventory and Calculating Serv., Inc.*, 11-CV-1510, 2014 WL 4352060, at *10 (N.D.N.Y. Aug. 20, 2014) (D'Agostino, J.); *see also Danaher Corp. v. Travelers Indem. Co.*, 10-CV-0121, 2015 WL 409525, at *8 (S.D.N.Y. Jan. 16, 2015) (finding that costs for duplication, travel and related expenses, couriers, postage, documentation, transcripts, and legal research were all compensable) report-recommendation adopted by 2015 WL 1847425 (S.D.N.Y. Apr. 14, 2015). After carefully considering the submitted evidence related to costs and the applicable law, the Court finds that Plaintiff is entitled to a total of $4,225.23 in costs.

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff's motion (Dkt. No. 11) is **GRANTED**; and it is further

**ORDERED** that the Clerk of the Court is directed to enter a default judgment in Plaintiff's favor against Defendant in the amount of **THREE HUNDRED EIGHTY TWO THOUSAND FIFTY NINE DOLLARS AND THIRTY CENTS ($382,059.30)**,[1] plus pre-judgment interest at a per diem rate of $92.79 from February 10, 2020, to the date of this

---

[1] This amount consists of the following: (1) $282,231.33 in principle; (2) $52,594.74 in interest at a rate of 12 percent from March 6, 2018, to February 10, 2020; (3) $43,008.00 in attorneys' fees; and (4) $4,225.23 in costs.

judgment, and post-judgment interest at the rate established by 28 U.S.C. § 1961(a), from the date judgment is entered until the date of payment.

Date:   July 20, 2020
        Syracuse, New York

_____
Hon. Glenn T. Suddaby
Chief U.S. District Judge